UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


RICHARD ALFRED WASHINGTON,

     Plaintiff,

v.                                        Case No. 3:18cv1333-LC-HTC

T YARDELY,
DITTERLINE,
ISERMAN,

     Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Richard Alfred Washington, proceeding *pro se* and *in forma pauperis*, files this action under 42 U.S.C. § 1983, alleging Defendants Yardley, Ditterline, and Iserman violated his Eighth Amendment right against deliberate indifference to a serious medical need by discontinuing his psychotropic medications or failing to treat him for a mental illness. This matter is before the Court on Defendants' motion for summary judgment. ECF Doc. 115. Upon consideration, the undersigned recommends the motion be GRANTED because the undisputed evidence shows that this case is about a disagreement over treatment, which does not rise to the level of an Eighth Amendment violation.

## I.    UNDISPUTED FACTUAL BACKGROUND

Plaintiff is an inmate of the Florida Department of Corrections ("FDOC") currently confined at Santa Rosa Correctional Institution ("SCRI").  He has a history of mental illness that dates back to at least 2012, when he was diagnosed with paranoid schizophrenia while at Regional Medical and Reception Center at Lake Butler and prescribed anti-psychotic medications Seroquel 200 mg in the morning and 500 mg in the evening along with Prozac 20 mg.  ECF Docs. 113-2 at 132-33; 114-1 at ¶ 2.  Plaintiff continued to be prescribed these medications and dosages after he was transferred to Jefferson Correctional Institution.  *Id.*  In December 2015, Plaintiff was transferred to Blackwater River Correctional Facility ("BRCF"), which is where the events forming the crux of Plaintiff's claims took place.  *Id.;* ECF Doc. 20.

After arriving at BRCF, Plaintiff was seen by Dr. Yelton, who issued orders continuing Plaintiff on Seroquel 200 mg in the morning and 500mg in the evening. ECF Doc. 114-1 at ¶ 13.  Dr. Yelton modified the prescription in June 2016 to change the dosages.  *Id.*  Dr. Yelton's prescriptions lasted through October 2016.  *Id.*

In January 2017, Washington was assessed by Dr. Salib, who succeeded Dr. Yelton as the psychiatrist for BRCF.  ECF Docs. 113-1 at 152-53; 114-1 at ¶ 4.  Dr. Salib restarted Plaintiff on the same medications and dosages that had been prescribed by Dr. Yelton, and also added Prozac 20mg for depression, along with

Benadryl 50 mg for anxiety. *Id.* Dr. Salib modified those prescriptions on May 30, 2017, and ordered Seroquel 700 mg, Prozac 20 mg and Benadryl 50mg to be given at night for 90 days. *Id.*

Washington was transferred to Duval County on September 5, 2017 and returned to BRCF on October 26, 2017. ECF Docs. 113-2 at 20, 92; 113-1 at 117. Upon his return to BRCF, he was prescribed Benadryl 50mg, Prozac 50 mg, and Seroquel 300 mg. ECF Doc. 113-4 at 1. In November 2017, after three (3) separate instances of either not showing up for his mental health call or refusing his medications, Dr. Iserman ordered the Prozac be discontinued. ECF Docs. 113-4 at 1; 114-1 at ¶ 25. Dr. Iserman also discontinued Plaintiff's other psychotropic medications for noncompliance. ECF Docs. 113-2 at 89; ECF Doc.114-1 at 27.

On December 7, 2017, Dr. Iserman assessed Plaintiff and determined he was adequately groomed, appropriately attired, hostile, argumentative, alert and oriented to person, place, time and situation, in no acute distress and cognitively intact. Although Plaintiff threatened to file grievances unless he was prescribed medication, Dr. Iserman nonetheless discontinued Plaintiff's psychotropic medications. Dr. Iserman found that there was no indication Plaintiff needed them and also noted that Plaintiff had been repeatedly no-showed for dosing and psychiatric appointments. ECF Docs. 113-1 at 107-108; 114-1 at ¶ 32. While Dr. Iserman diagnosed Plaintiff with "F29 other unspecified psychotic disorder (by history)," he also assessed

Plaintiff as malingering with no clear evidence of actual illness. ECF Doc. 113-1, p. 109; 114-3, ¶ 20.

On February 21, 2018, a psychologist, Dr. Pake, completed a close management referral assessment and classified Washington as S-3 with present mental status evaluation of mentally behaviorally stable. ECF Doc. 113-1 at 100. Plaintiff was transferred from BRCF to SRCI on July 20, 2018. ECF Doc. 113-2 at 76-77. Plaintiff has not restarted his mental health medications while at SRCI. ECF Doc. 113-1 at 1-87.

## II.    SUMMARY JUDGMENT STANDARD

To prevail on their motion for summary judgment, Defendants must show that Plaintiff has no evidence to support his case or present affirmative evidence that Plaintiff will be unable to prove his case at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If Defendants successfully negate an essential element of Plaintiff's case, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 248 (1986) (emphasis in original). An issue of fact is material if it is a legal element of the claim, under the applicable substantive law, which might affect the

outcome of the case. *See id.*; *accord Tipton v. Bergrohr GMBH–Siegen*, 965 F.2d 994, 998 (11th Cir. 1992).

The Court must view all the evidence, and all factual inferences reasonably drawn from the evidence, "in the light most favorable to the non-moving party." *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust Co. v. Fidelity and Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)). The Court is not obliged, however, to deny summary judgment for the moving party when the evidence favoring the nonmoving party is "merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 249–50 (citations omitted). "A mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice" to demonstrate a material issue of genuine fact that precludes summary judgment. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (quoting *Anderson*, 477 U.S. at 242). Additionally, "conclusory allegations without specific supporting facts have no probative value," and are legally insufficient to defeat summary judgment. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000) (citations omitted).

## III.    DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED

Defendants argue they are entitled to summary judgment because (1) Plaintiff's claims arise out of a disagreement with his treatment, which does not amount to deliberate indifference under the Eighth Amendment; and (2) even if Plaintiff has shown more than a disagreement over treatment, Defendants' conduct did not cause any injuries to Plaintiff.  In support of their motion, Defendants rely upon Plaintiff's medical records, consisting of almost 600 pages (ECF Docs. 113-1 and 113-2), and Defendants' affidavits.

Washington filed a response under penalty of perjury, along with a declaration accompanied by documents related to his underlying state criminal convictions. ECF Doc. 121 at 25.  The Court will consider the non-conclusory factual allegations contained in Plaintiff's response as well as in his sworn complaints.  *See Sammons v. Taylor*, 967 F.2d 1533, 1545 n.5 (11th Cir. 1992) ("[F]acts alleged in [a prisoner's] sworn pleading are sufficient and . . . a separate affidavit is not necessary."); *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986) (holding specific facts pled in a sworn complaint must be considered in opposition to a motion for summary judgment).  Additionally, because Plaintiff also relies upon the grievances attached to his initial complaint, the Court will consider those as well.

"The Eighth Amendment forbids punishments that are cruel and unusual in light of contemporary standards of decency."  *Hernandez v. Fla. Dep't of Corr.*, 281

F. App'x 862, 865 (11th Cir. 2008). The Supreme Court has interpreted the Eighth Amendment as including a prohibition against "deliberate indifference to an inmate's serious medical needs . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). However, "[m]edical treatment violates the Eighth Amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' Mere incidents of negligence or malpractice do not rise to the level of constitutional violations." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (internal citations omitted). To prevail on an Eighth Amendment deprivation of medical care claim, a prisoner must prove three (3) elements: (1) a serious a medical need; (2) the defendant's deliberate indifference to that need; and (3) causation. *Mann v. Taser Int'l, Inc.,* 588 F.3d 1291, 1306-07 (11th Cir. 2009).

### A.    Serious Medical Need

To establish the first element of his claim, Plaintiff must present evidence sufficient to demonstrate that he suffered a serious medical need. "[A] serious medical need is . . . one . . . diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (internal quotation marks omitted). "[A]n objectively serious medical need" is one so grave that, "if left unattended, [it] poses a substantial risk of serious harm." *Taylor v.*

*Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (internal quotation marks, alterations, and citations omitted).

Defendants argue Plaintiff cannot show he suffered from a serious medical need because Dr. Iserman determined Plaintiff did not need psychotropic medications. As an initial matter, however, the undersigned disagrees and finds that Plaintiff suffered from a serious medical need. *See Gunter v. Castineta*, 561 F. App'x 497, 502 (6th Cir. 2014) (plaintiff's "mental illness qualifies as a 'serious medical need' – it was 'diagnosed by a physician' as, presumably, 'mandating treatment' and was treated at the Richland Correctional Institution, the previous facility in which [plaintiff] was incarcerated"); *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001) (mental illnesses that require treatment are serious medical needs within the meaning of the Eighth Amendment). Plaintiff has a documented history of mental illness that dates back until at least 2012. Although Plaintiff's medical illness may have improved by 2017, such that Plaintiff no longer needed psychotropic medications, there is no dispute that he had been diagnosed with a mental illness. Indeed, even after Plaintiff's medications had been discontinued, Plaintiff was nonetheless required to participate in 30-day encounter case management interviews and was reminded that he must see a counselor every thirty (30) days. ECF Docs. 113-1 at 105; 114-3 at ¶ 23; *see also, Preyer v. McNesby*, 2009 WL 1605537 at *7 (N.D. Fla. June 5, 2009) (finding defendants' argument that

plaintiff, who had been diagnosed with schizophrenia and "prescribed anti-psychotic medications," was not suffering from an objectively serious medical need was "offensive").

### B.    Deliberate Indifference

To establish the second element of his claim, Plaintiff must show Defendants knew of, and disregarded, an excessive risk to his health or safety. "[T]he official must both [have been] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have] draw[n] the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Plaintiff must prove (1) subjective knowledge of a risk of serious harm; and (2) disregard of that risk (3) by conduct that is more than mere negligence. *See Nam Dang by & through Vina Dang v. Sheriff, Seminole Cty. Fla.*, 871 F.3d 1272, 1280 (11th Cir. 2017). An official disregards a serious risk by more than mere negligence "when he [or she] knows that an inmate is in serious need of medical care, but he [or she] fails or refuses to obtain medical treatment for the inmate." *Nam Dang,* 871 F.3d at 1280, citing *Lancaster v. Monroe Cty., Ala.*, 116 F.3d 1419, 1425 (11th Cir. 1997), *overruled on other grounds by LeFrere v. Quezada*, 588 F.3d 1317, 1318 (11th Cir. 2009).

The second element of a deliberate indifference claim requires a plaintiff to show "a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish." *Taylor*, 221 F.3d at 1258. "To show the

required subjective intent to punish, a plaintiff must demonstrate that the public official acted with an attitude of 'deliberate indifference.'" *Id.* (quoting *Estelle*, 429 U.S. at 105). A defendant's response to plaintiff's serious medical need must be "poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligen[ce] in diagnosi[s] or treat[ment], or even [m]edical malpractice." *Taylor* 221 F.3d at 1258 (citing *Estelle,* 429 U.S. at 105–06 (internal quotation marks omitted)).

Defendants contend that Plaintiff cannot establish the second element of his Eighth Amendment claim against Dr. Iserman because Plaintiff's claim amounts to nothing more than a disagreement over treatment. According to Defendants, Dr. Iserman discontinued Plaintiff's medication because (1) he was noncompliant with the medications and the treatment requirements and (2) Plaintiff did not need them. Thus, Dr. Iserman discontinued Plaintiff's medications based on his assessment of Plaintiff and not based on deliberate indifference. Additionally, as to Ditterline and Yardley, Defendants argue that the record shows that they either attempted to treat or treated Plaintiff on a regular basis and further did not make the decision to discontinue the medications, or even have the authority to do so.

    1.   <u>Noncompliance with medications</u>

As stated above, the crux of Plaintiff's complaint arises from Dr. Iserman's discontinuance of his medications in November 2017, after Plaintiff returned to

BRCF from Duval County. A review of the evidence presented shows a long history of Plaintiff being noncompliant with his medications. According to Dr. Iserman's affidavit, on October 30, 2017, Washington refused his morning medications. ECF Doc. 114-1 at ¶ 22. On November 7, 2017, he failed to show up to his mental health call out with Ditterline. ECF Doc. 114-1 at ¶ 23; ECF Doc. 114-2 at ¶ 25. On November 9, 2017, Washington refused his Prozac for the fifth time that month. ECF Doc. 114-1 at ¶ 24. Thus, on that date, Dr Iserman ordered that Prozac be discontinued. ECF Doc. 114-1 at ¶¶ 24-26.

On November 16, 2017, he failed to show up to an appointment with Dr. Iserman. ECF Doc. 114-1 at ¶ 27. Thus, at that time Dr. Iserman discontinued Seroquel and Benadryl. ECF Doc. 114-1 at ¶ 27. On that same date, Nurse Donohoo, who is not a defendant, noted that Plaintiff failed to respond to the posted call-out; that security tried to have him sent to medical with no success; and that this was Washington's third no show. ECF Doc. 114-1 at ¶ 28. Thus, Washington's medications would not be renewed until he was evaluated by a psychiatrist. ECF Doc. 114-1 at ¶ 28.

The grievances Washington attaches to his original complaint also confirm that Washington consistently failed to take his medications as prescribed, cooperate in assessments and show up to psychiatric appointments. For example, when Washington complained on November 30, 2017 that "I have been taken off my

medication for no reason," D. McGowan responded on December 5, 2017 that "your medications were expired since you failed to show up for a scheduled appointment with the psychiatrist in November. You have been re-scheduled to talk to the psychiatrist very soon. Watch the call-out." ECF Doc. 1-2 at 8. Also, on December 28, 2017, the Warden and Dr. Molina responded to one of Washington's grievances by noting, "Review finds that you are under the care of the Psychiatrist here at Blackwater and he has determined that at this time he is not re-prescribing the medication you either refused or failed to show for scheduled appointments with him to renew. If you want to be re-evaluated, send a request to your mental health counselor." ECF Doc. 1-2 at 12.

Although in Plaintiff's response he appears to dispute that he was noncompliant, he does not necessarily dispute the October and November instances. Instead, he refers to the consent form he signed in December 2017, but there is no dispute that he was seen by Dr. Iserman on December 7. Moreover, Plaintiff has a history of noncompliance that is unrefuted. In Dr. Iserman's affidavit, he identifies (based on the medical records) over 40 separate instances in which Plaintiff was not administered his medications because he was a no show in 2016, and 6 days in 2017 (prior to October 30). ECF Doc. 114-1 at ¶¶ 15, 18. Also, in 2017, Plaintiff refused to see or did not show up for appointments with the psychiatrist on four (4) separate occasions. ECF Doc. 114-1 at ¶ 17. In Ditterline's affidavit, he identifies ten (10)

instances from 2016 to 2018 when Plaintiff either failed to show up or refused to be assessed.  ECF Doc. 114-2 at ¶¶ 13-14, 16-17, 23-25 28-30.  Similarly, in Yardley's affidavit, he also identifies several instances when Plaintiff did not show or refused to be assessed.  ECF Doc. 114-3 at ¶¶ 12, 23, 27.

Based on the evidence presented, no reasonable jury could find that Dr. Iserman's discontinuance of Plaintiff's medication was based on anything other than the legitimate reason of noncompliance.  Additionally, even if Dr. Iserman had been incorrect in determining that Plaintiff was noncompliant, such error is not "so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness" as necessary to establish a constitutional violation.  *See Rogers v. Evans*, 792 F.2d 10152, 1058 (11th Cir. 1986).

### 2.    No medical need

In addition to Washington's documented noncompliance, a review of the medical records and affidavits also show that Dr. Iserman did not believe that Plaintiff had a medical need for psychotropic medications.  Dr. Iserman saw Washington on December 7, 2017 and noted that "the inmate was again off medication due to multiple no shows"; that Washington "gave no specific reason for being on the medications other that repeatedly saying the medications were Court-ordered and need to be given"; that he made repeated attempts to talk with Washington to decipher exactly what his concerns were, to no avail; and that

Washington ultimately left the office "threatening grievances until he gets what he wants."  ECF Doc. 114-1 at ¶ 32.

Despite Washington's limited cooperation, Dr. Iserman was able to make the following assessments:  Washington was adequately groomed and appropriately attired; he was hostile, argumentative, and threatened retaliation if not given what he wanted; he was alert and oriented to person, place, time and situation; his mood was angry and irritable; his affect was constricted, but he was congruent with thoughts and mood; his speech was loud and pressured; his thought process was logical, coherent and goal-directed; he was found to be in no acute distress and cognitively intact; and he had no suicidal or homicidal threat."  ECF Doc. 114-1 at ¶32.  Thus, Dr. Iserman assessed Plaintiff with "F29 - other unspecified psychotic disorder (by history)" with a "proposed provisional change" of "malingering with no clear evidence of actual illness."  ECF Doc. 114-1 at ¶ 32.

Dr. Iserman further noted that Washington's "current symptoms had no significant impact on [his] ability to function satisfactorily in the current level of care."  ECF Doc. 114-1 at ¶ 32.  Dr. Iserman therefore discontinued all psychotropic medications "as there was no current indication for them" and "nothing . . . to suggest the presence of mania or any other psychotic process."  ECF Doc. 114-1 at ¶ 32.  Dr. Iserman also found Plaintiff's "symptoms to be feigned for purposes of

manipulation" and not "consistent with paranoid schizophrenia in [his] medical judgment." ECF Doc. 114-1 at ¶ 32.

While Plaintiff may disagree with Dr. Iserman's assessment of him, he has presented no evidence to show that Dr. Iserman's findings were unreasonable or were a fabrication to hide an underlying true intent to cause Plaintiff harm. Instead, he merely relies on the fact that he has a "documented history of mental illness," dating back to 2013. ECF Doc. 121 at 2-3. He attaches to his declaration scattered records from his underlying criminal conviction to support his claim of documented mental illness. That history, alone, however, is insufficient to show that Dr. Iserman was deliberately indifferent in determining that Plaintiff did not need the medication, even if Dr. Iserman had been wrong in that assessment or negligent in making that assessment. *See Farrow*, 320 F.3d at 1243. Similarly, Plaintiff's references to "suicidal ideations" or attempts that occurred years prior to when Dr, Iserman discontinued Plaintiff's medications (ECF Doc. 121 at 6) have no bearing on showing that Dr. Iserman acted with deliberate indifference in discontinuing his medications.

Moreover, Dr. Iserman's determinations are supported by Plaintiff's assessed stability *after* the medications were discontinued and the fact that he has not been placed back on the medications. Indeed, according to Dr. Iserman's affidavit, psychologist Dr. Pake assessed Washington in February 2018 and found him

"mentally/behaviorally stable."  ECF Doc. 114-1 at ¶ 34.  Additionally, Washington was transferred to SRCI in July 2018 and remains off his medications.

In cases such as Plaintiff's, where medical treatment was given but a plaintiff claims it is constitutionally insufficient, courts are exceedingly hesitant to find liability.  "[A]s *Estelle* teaches, the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment."  *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (citing *Estelle*, 429 U.S. at 107); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (finding that the mere fact that an inmate desires a different mode of medical treatment does not amount to deliberate indifference in violation of the Constitution); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (prison medical personnel do not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with that of the inmate-patient).  Indeed, "[t]he failure to administer stronger medication is generally a medical judgment that is not an appropriate basis for imposing liability."  *Ross v. Corizon Med. Servs.*, 700 F. App'x 914, 916 (11th Cir. 2017) (citing *Adams*, 61 F.3d at 1547).

Washington's claims come down to a difference of opinion between himself and his mental health professionals over the course of treatment.  Such a scenario is

not an appropriate basis for imposing liability under the Eighth Amendment. Moreover, there is no evidence that any of the Defendants failed to treat Plaintiff. To the contrary, the evidence presented shows that from October 14, 2016 to July 18, 2018, Ditterline attempted to provide monthly assessments, therapy, individual counseling, mental health case management and interviews for confinement screening to Washington. ECF Doc. 114-2. Likewise, Yardley attempted to provide the same services to Washington from August 24, 2016 to January 8, 2018 but was frequently met with a refusal to participate or cooperate by Washington. ECF Doc. 114-3. The records also make it clear that on several occasions both prior to and after November 7, Washington refused to take his medications or refused to be treated. ECF Doc. 114-1, 114-2 and 114-3. When a plaintiff "is repeatedly taken to medical providers for treatment, we should be cautious to find an Eighth Amendment violation." *Ross*, 700 F. App'x at 916 (citing *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) ("[W]hen a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation.")).

While Plaintiff appears to take issue with his monthly assessments as not being enough and as not comparable to "24 hours a day 7 days a week," the fact that Plaintiff was consistently and regularly treated by Defendants and other mental health professionals undermines his claim of deliberate indifference. Similarly, while Plaintiff alleges that Ditterline or Yardley refused to treat him, the medical

records belie those allegations. Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records. *See Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). In short, the evidence shows that it was Washington's refusal to cooperate – not any refusal to treat Washington – that resulted in any instances of non-treatment.

    3.  <u>Causation</u>

The third element of Plaintiff's deliberate indifference claim is causation. Proving causation in a deliberate indifference case requires a plaintiff to demonstrate a link between a defendant's act or omission and the excessive risk of harm, and a link between the risk of harm and the plaintiff's injury. *LaMarca v. Turner*, 995 F.2d 1526, 1538-39 (11th Cir. 1993). For the same reasons that Plaintiff cannot establish the second element of his claim, he also cannot establish causation. Notably, the uncontradicted evidence shows that Defendants Ditterline and Yardley did not discontinue Washington's medications and Plaintiff has suffered no injuries from the discontinuance of his medications while at BRCF.

Both Ditterline and Yardley state in their affidavits that they "did not make any decisions regarding Mr. Washington's medication management or the discontinuance of medication for his mental health. Those decisions are made by the psychiatrist." ECF Doc. 114-2 at ¶ 10; ECF Doc. 114-3 at ¶ 10. This fact is confirmed by Dr. Iserman, who states in his affidavit that the "LMHC are not

physicians and do not make diagnoses regarding mental health conditions. LMHC do not prescribe medication or have the ability to order treatment or discontinue medication." ECF Doc. 114-1 at ¶ 10. While Plaintiff alleges, in conclusory fashion, that Ditterline and Yardley refused to place him back on his medication, he has presented no evidence to show that either had the authority to do so. Thus, he has not offered proof that Ditterline and Yardley caused the discontinuation of his medications and thereby caused the subsequent alleged harm to Washington.

Even as to Dr. Iserman, who admits he formally discontinued Washington's medications, Washington has failed to present any evidence that Dr. Iserman's conduct caused any injury. Plaintiff alleges that because his medications were discontinued, he declared a psychiatric emergency on January 6, 2018, "after over 3 months of hearing voices and paranoia," and having "paranoid ideations." ECF Doc. 20 at 6. Plaintiff further contends that as a result of the incident he was "beaten" and placed in close management. *Id.* There is no evidence, nor does Plaintiff allege, that any of the Defendants were involved in the use of force incident.

Plaintiff has also provided no evidence, other than his own conclusory allegations to show that the January 6 incident was caused by the discontinuance of his medications. Regardless, even accepting his allegations as true, there is no evidence to show that Defendants would have been aware of any adverse effects

from the discontinuance of Plaintiff's medications as they had limited or no interaction with him after November 2017.

After Dr. Iserman discontinued Plaintiff's medications in November, Plaintiff met with Yardley for his 30-day encounter case management interview on January 4, 2018. ECF Doc. 114-3 at ¶ 23. Washington refused to talk to Yardley, which limited Yardley's assessment of him. ECF Doc. 114-3 at ¶ 23. Additionally, while Yardley noted that Plaintiff was irritable and reported hearing one auditory voice 2-3 times per day with varied duration, he "had appropriate speech, logical, coherent, goal-directed thoughts, fair insight, memory functions were grossly intact [and] suicidal or homicidal ideation [was] unknown because he would not talk." ECF Doc. 114-3 at ¶ 23. On January 8, Yardley completed a form indicating that Washington refused mental health services. ECF Doc. 114-3 at ¶ 27. The last time Ditterline saw Plaintiff prior to the January 6 incident was before November 7, 2017, and Ditterline did not see Plaintiff again until March 2018. ECF Doc. 114-2 at ¶¶ 24-27. Similarly, the last time Dr. Iserman saw Plaintiff was in December 2017, when he was assessed as not needing medication. ECF Doc. 114-1.

Washington, therefore, has not produced evidence sufficient to persuade a reasonable jury to find that Defendants were deliberately indifferent to a serious medical need and that their conduct caused any injury to Washington. His conclusory allegations, alone, are insufficient, particularly when they are blatantly

contradicted by the record. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment"); *Thomson v. Salt Lake County,* 584 F.3d 1304, 1312 (10th Cir. 2009) ("[B]ecause at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record: more specifically, as with any motion for summary judgment, when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts."). Indeed, a plaintiff opposing a motion for summary judgment generally "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### C.    Dismissal For Lack Of A Physical Injury

In Plaintiff's third amended complaint he seeks "the maximum amount by law for monetary damages $150,000 and the maximum by law in punitive damages," and "$150,000 due to being beaten, loss of gain time, and placed on close management." ECF Doc. 20 at 10. Although Plaintiff has requested only compensatory and punitive damages, he has presented no evidence to show that he

suffers from a physical injury. Thus, even if Plaintiff were able to establish a constitutional violation (which the undersigned finds he has not done), he is not entitled to any relief.

It is well settled in the Eleventh Circuit that an inmate cannot recover compensatory or punitive damages for a constitutional violation unless he can demonstrate a more than *de minimis* physical injury. *See Brooks v. Warden*, 800 F.3d 1295, 1307 (11th Cir. 2015) (collecting cases construing § 1997e(e) of the Prison Litigation Reform Act). Where the physical injury is *de minimis* or, in some circumstances, where there is no physical injury, the plaintiff can recover only nominal damages. *Id*. Although the Eleventh Circuit has not adopted a strict definition of "*de minimis*," it has acknowledged an injury is more than *de minimis* if it is "an observable or diagnosable medical condition requiring treatment by a medical care professional." *Thompson v. Sec'y, Fla. Dep't of Corrections*, 551 F. App'x 555, 557 n.3 (11th Cir. 2014).

In Plaintiff's third amended complaint, he alleges simply that he has "still lingering effects of such the pain of being beat[en] and mental and emotional distress that accompanies." ECF Doc. 20 at 12. He does not present any medical records or testimony specifying any physical injuries. The undersigned finds that Plaintiff's allegations of "lingering effects" are general and conclusory and, further, belied by the medical records which show no continuing treatment for physical injuries.

In the absence of a request for nominal damages or for "other relief", this action should be dismissed because Plaintiff would not be entitled to any recovery even if he could show any constitutional violation. *See Sears v. Rabion,* 97 F. App'x 906 (11th Cir. 2004) (affirming district court's *sua sponte* dismissal of complaint under § 1997e(e), noting that plaintiff's complaint could not be liberally construed as requesting nominal damages, because he specifically requested compensatory and punitive damages); *Qualls v. Santa Rosa Cnty. Jail,* Case No. 3:10cv54/MCR/MD, 2010 WL 785646, at *3 n. 1 (N.D. Fla. Mar. 4, 2010) (dismissing the plaintiff's complaint as it "cannot be liberally construed as requesting nominal damages, because he specifically requested only $250,000 in compensatory and/or punitive damages"); *Harrison v. Myers,* Case No. 10–0566–KD–N, 2011 WL 3204372, at *7 (S.D. Ala. July 13, 2011) (prisoner's request of $2,500 was not for nominal damages in as much as nominal damages implies a mere token or trifling).

## IV.    CONCLUSION

Accordingly, it is respectfully RECOMMENDED that:

1.    Defendant's motion for summary judgment (ECF Doc. 115) be GRANTED on all of Plaintiff's claims.

2.    The clerk be directed to close the file.

Done at Pensacola, Florida this 27th day of April, 2020.

/s/ Hope Thai Cannon

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.